**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jose Daniel Torres, Jr., | No. CV-20-00558-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Jose Daniel Torres, Jr.'s appeal of his denial of social security disability benefits. The appeal is fully briefed (Docs. 14, 15, 16), and the Court now rules.

**I.    BACKGROUND**

Plaintiff was 44 years old at the time of his hearing. (AR 40). He completed high school and two years of college education. (*Id.* at 186) Plaintiff has past relevant work experience as an infantryman, sheriff's deputy, corrections officer, security manager, and armored car driver. (*Id.* at 26). Plaintiff suffers from "minimal cervical and lumbar degenerative disc disease, post-traumatic stress disorder ('PTSD') and major depressive disorder." (*Id.* at 17).

On September 3, 2015, Plaintiff filed an application for Social Security Disability Insurance benefits for a disability beginning on December 1, 2014. (*Id.* at 14). The Social Security Administration denied Plaintiff's application initially on May 2, 2016 and upon reconsideration on December 28, 2016. (*Id.*). On December 12, 2018, an Administrative

Law Judge issued a decision finding Plaintiff not disabled and denied the application. (*Id.* at 14–20). Plaintiff's request for review was denied by the Social Security Administration Appeals Council on January 17, 2020. (*Id.* at 1–3). Plaintiff now appeals the ALJ's final decision. (Doc. 14).

## II.   LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm

simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted). The Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

### a. Definition of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show, among other things, that he is "under a disability." 42 U.S.C. § 423(a)(1)(E). The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

### b. Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520; *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (describing the sequential process). A finding of "not disabled" at any step in the sequential process will end the ALJ's inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the ALJ at the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

Second, if the claimant is not gainfully employed, the ALJ next determines whether the claimant has a "severe medically determinable physical or mental impairment." 20

C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities mean the "abilities and aptitudes to do most jobs." *Id.* § 404.1521(b). Further, the impairment must either be expected "to result in death" or "to last for a continuous period of twelve months." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Third, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments specifically listed in the regulations. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. *Id.* § 404.1520(d). Before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares its "residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work the claimant previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the fifth and final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's residual functional capacity, together with vocational factors (age, education, and work experience). *Id.* § 404.1520(g)(1). If the claimant can make an adjustment to other work, then he is not

disabled. If the claimant cannot perform other work, he will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

### c.  ALJ's Evaluation Under the Five-Step Process

Here, at step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date, December 1, 2014. (AR 16). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: post-traumatic stress disorder, major depressive disorder, and minimal cervical and lumbar degenerative disc disorder. (*Id.* at 17). At step three, the ALJ concluded that Plaintiff's impairments did not meet the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18). At step four, the ALJ determined that Plaintiff had a residual functional capacity to perform medium work but concluded that Plaintiff would be unable to perform any of his past relevant work. (*Id.* at 19, 26). Finally, at step five, the ALJ found that Plaintiff was not disabled because he could perform jobs that existed in significant numbers in the national economy—such as a laundry worker, hand packager, or merchandise marker. (*Id.* at 27).

## III.  ANALYSIS

Plaintiff argues that the ALJ erred by (1) rejecting Plaintiff's symptom testimony, (2) assigning "little weight" to the opinion of Plaintiff's treating physician, and (3) assigning "great weight" to the opinion of a state agency reviewing physician. (Doc. 14.). The Court addresses each in turn.

### a.  Symptom Testimony

Plaintiff first argues that the ALJ erred by rejecting Plaintiff's symptom testimony without "specific, clear, and convincing reasons supported by substantial evidence" in the record. (*Id.* at 16). Specifically, Plaintiff argues that the ALJ failed to explicitly connect the objective medical evidence cited in the record to Plaintiff's subjective testimony and did not find that a substantial part of Plaintiff's usual day was spent doing activities inconsistent with his alleged limitations. (*Id.* at 18, 20).

The ALJ must engage in a two-step analysis to determine whether a plaintiff's symptom testimony is credible. First, the plaintiff must present "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotation omitted). If the plaintiff produces such evidence, the ALJ cannot discredit the plaintiff's symptom testimony "solely because the degree of pain alleged by the [plaintiff] is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 749–750 (9th Cir. 1995). Rather, the ALJ must offer "specific, clear and convincing reasons" for rejecting the symptom testimony. *Garrison*, 759 F.3d at 1015.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's alleged symptoms. (AR 20). However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects," of some of the alleged symptoms were not "entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout [the] decision." (*Id.*).

The Court finds that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony. When determining the credibility of a plaintiff's symptom testimony, an ALJ can consider the following factors, including but not limited to: the plaintiff's "reputation for truthfulness, inconsistencies either in [plaintiff's] testimony or between [the plaintiff's] testimony and conduct, [his] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the [alleged] symptoms." *Thomas v. Barnhart,* 278 F.3d 947, 958–59 (9th Cir. 2002).

After considering the factors above, the ALJ reasoned that Plaintiff's subjective symptom testimony was inconsistent with the objective medical evidence in the record. (*Id.*).; *see also Thomas*, 278 F.3d at 960 (an ALJ cannot not reject a plaintiff's symptom testimony solely because the objective medical evidence is inconsistent with the alleged limitations, however, the ALJ may properly reject the testimony "by using ordinary

- 6 -

techniques of credibility evaluation" to determine the testimony was not credible (quotation omitted)). Substantial evidence supports the ALJ's conclusion. For example, Plaintiff claimed that he experiences pain and walks with a limp, but Plaintiff's exams yielded normal findings that "d[id] not show this level of discomfort or similar complaints." (AR 20). The evidence also showed Plaintiff was "generally doing well when adhering to treatment." (*Id.* at 21–22); *see Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (when determining plaintiff's credibility, the ALJ must consider the "type, dosage, effectiveness, and adverse side-effects" of treatment). Specifically, Plaintiff reported that Cymbalta helped his depression and Hydroxyzine worked "okay" for his anxiety. (AR 21). Both Plaintiff and his wife confirmed that he had improved from treatment and that his panic attacks and depression were manageable. (*Id.*). The ALJ also considered the reports of various physicians that evidenced that Plaintiff's "physical exams were generally unremarkable overall." (*Id.* at 22).

Further, the ALJ reasoned that Plaintiff's daily activities were inconsistent with the severity of Plaintiff's alleged limitations. (*Id.* at 20). Plaintiff reported riding his motorcycle, doing household chores, taking his children to Disneyland, exercising, working on cars, spending time with family, and occasionally attending his daughter's extra-curricular activities. (*Id.*). The ALJ reasoned that Plaintiff's ability to ride his motorcycle showed "far more concentration and ability to go into public than he asserted." (*Id.*); *see Garrison*, 759 F.3d at 1016 (stating that Plaintiff's daily activities impact his credibility if the activity level is inconsistent with Plaintiff's alleged limitations). In terms of the level of Plaintiff's capabilities, the ALJ stated that Plaintiff "tr[ies] to do chores" and cleans "as he can." (*Id.*). *See Shaw v. Berryhill,* No. 6:16-CV-02188-PK, 2018 WL 1406601, at 9 (D. Or. Jan. 23, 2018) (stating that the plaintiff's continued engagement in an activity that challenges him "demonstrates that he is capable of accomplishing challenging tasks despite his limitations, and indicates capacities transferable to the workplace"); *id*. (noting that there was no evidence that the plaintiff required assistance from others in completing the daily activities). Finally, although Plaintiff testified that he

stopped many of the activities recently, the evidence in the record supports that Plaintiff had been improving with treatment over the past year. (AR 21). Accordingly, the ALJ properly rejected Plaintiff's symptom testimony by providing specific, clear, and convincing reasons for determining that the testimony was not credible.

### b. Treating Psychiatrist's Assessment

Next, Plaintiff argues that the ALJ erred by rejecting the assessment provided by Plaintiff's treating psychiatrist, Paul Valbuena, without specific and legitimate reasons for doing so based on substantial evidence in this record. (Doc. 14 at 9–16). The ALJ assigned "little weight" to Dr. Valbuena's opinion because Dr. Valbuena did not cite specific treatment records to support his opinion and "his own treatment records d[id] not support the degree of limitations proposed [in his opinion]." (AR 23). Plaintiff specifically argues that the ALJ improperly relied on Dr. Valbuena's lack of citations when rejecting his opinion and relied on "treatment record findings that were either inconsistent or irrelevant" to Plaintiff's condition. (Doc. 14 at 11; AR 23).

The opinion of a plaintiff's treating physician is afforded "controlling weight" so long as it is supported by medically acceptable diagnostic techniques and is consistent with the other substantial evidence in the plaintiff's record. *Trevizo v. Berryhill*, 871 F.3d 664, 645 (9th Cir. 2017). Although the opinion of a treating physician is entitled to substantial weight, the ALJ can reject a physician's uncontradicted opinion with 'clear and convincing reasons that are supported by substantial evidence." *Id.* If the treating physician's opinion is contradicted by another physician's opinion, however, the ALJ must provide "specific and legitimate reasons [for rejecting the opinion] that are supported by substantial evidence." *Id.*

Contrary to Plaintiff's assertion that the ALJ is not qualified to analyze medical evidence, an ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." (Doc. 14 at 14). *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). When determining the weight to give a treating physician's opinion, the ALJ must consider factors such as the length of the treatment relationship and

frequency of examination; the nature and extent of the treatment relationship; the supportability and consistency of the opinion; the physician's specialization; and any other relevant factors. 20 C.F.R. 404.1527(c).

Here, the ALJ provided "specific and legitimate" reasons for assigning "little weight" to Dr. Valbuena's medical source statement. Although not expressly stated, the ALJ's decision demonstrates that he considered the relevant factors set forth in 20 C.F.R. 404.1527(c) when weighing Dr. Valbuena's opinion. *See Kelly v. Berryhill*, 732 Fed. App'x 558, 562 n.4 (9th Cir. 2018) (the ALJ "is not required to make an express statement that []he considered all the factors" (quotation omitted)). The ALJ discussed the nature and length of the treatment relationship, noting that Dr. Valbuena was Plaintiff's treating physician who conducted mental status exams on Plaintiff from December 22, 2015 to March 15, 2016. (AR 21, 23). *See* 20 C.F.R. 404.1527(c)(2)(i)–(ii). He also acknowledged that Dr. Valbuena specialized as a psychiatrist. (AR 26). *See* 20 C.F.R. 404.1527(c)(5). Additionally, the ALJ considered the supportability and consistency of Dr. Valbuena's opinion on Plaintiff's limitations. (AR 23). *See* 20 C.F.R. 404.1527(3)–(4).

In his opinion, Dr. Valbuena concluded that Plaintiff's impairments prevented him from completing an 8-hour workday, but Plaintiff's treatment records showed that Plaintiff's mental status exams from Valbuena Psychiatry were generally normal. (AR 23). The ALJ summarized the conflicting clinical evidence from Plaintiff's mental status exams, noting that: Plaintiff's appearance was unremarkable; his speech, memory, judgment, insight and associations were intact; his was behavior appropriate; his attention span was normal; his thinking was "basically logical;" and he did not exhibit cognitive difficulty, suicidal ideals or intentions, hallucinations or delusions. (*Id.*). Accordingly, the ALJ found that Dr. Valbuena failed to cite to specific treatment records to support his opinion and that the opinion was inconsistent with Dr. Valbuena's own treatment records. (*Id.*). Thus, the ALJ satisfied the "specific and legitimate" standard when assigning "little weight" to Dr. Valbuena's opinion. *See Trevizo*, 871 F.3d at 665 (the ALJ can meet the specific and legitimate standard by summarizing the facts and conflicting clinical evidence

in detail, stating his own interpretation of the facts and evidence, and making findings accordingly).

### c. Reviewing Physician Assessment

Finally, Plaintiff contends that the ALJ erred by assigning "great weight" to the opinion of state agency reviewing physician, Daniel Gross, Psy.D, who did not examine Plaintiff or review the entire medical record. (Doc. 14 at 9; AR 26). Because treating physicians' opinions are generally given greater weight than all other medical source opinions, *Garrison*, 759 F.3d at 1012, Plaintiff argues that the ALJ gave too much weight to Dr. Gross's opinion. (Doc. 14 at 9). Further, Plaintiff argues that Dr. Gross's opinion did not serve as substantial evidence, on its own, to support the ALJ's finding that Plaintiff is not disabled. (*Id.* at 10).

The conflicting opinion of a non-treating or non-examining physician can serve as substantial evidence for the ALJ to reject a treating physician's opinion if the opinion is "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. On the other hand, the ALJ must provide specific and legitimate reasons for rejecting the treating physicians opinion, based on substantial evidence in the record, if the "nontreating source's opinion contradicts that of the treating physician but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician." *Andrews*, 53 F.3d at 1041.

The ALJ assigned "great weight" to the opinion of state agency consultant, Daniel Gross—who opined that Plaintiff could perform certain work-related functions—because "the medical evidence does not support greater restrictions." (AR 26). Because Dr. Gross's opinion was based on a partial review of the record, rather than on independent findings, the ALJ had to meet the "specific and legitimate" standard for rejecting a treating physician's opinion. (Doc. 11-4, Exhibit 4A). For the reasons discussed above, the ALJ provided specific and legitimate reasons for assigning "little weight" to Dr. Valbuena's opinion, based on substantial evidence in the record that showed inconsistencies between his treatment findings and conclusions. *See Orn*, 495 F.3d at 632 (stating that an

"examining physician's independent clinical findings may be substantial evidence"). Thus, the ALJ did not err by assigning "great weight" to Dr. Gross's opinion.

## IV.  CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the ALJ decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 26th day of April, 2021.

James A. Teilborg
Senior United States District Judge